# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# COLUMBIA DIVISION

| | |
|---|---|
| WILLIAM RAY WHITE, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | NO. 1:18-cv-00093 |
| ) | |
| RIC WILSON, et al., ) | JUDGE CAMPBELL |
| ) | MAGISTRATE JUDGE FRENSLEY |
| Defendants. ) | |

## MEMORANDUM

### I. Introduction

Pending before the Court are the County Defendants' Motion to Dismiss (Doc. No. 20), Plaintiffs' Response (Doc. No. 28) to the Motion, and Defendants' Reply (Doc. No. 45). For the reasons set forth below, the Motion to Dismiss (Doc. No. 20) is **GRANTED,** in part, and **DENIED,** in part. The Court grants the request to dismiss Defendants Wayne County, Wayne County Sheriff's Department, and Ric Wilson. The Court also grants the request to dismiss Count Nine, and the Tennessee Constitutional claim raised in Count Two.

### II. Factual and Procedural Background

In the Complaint (Doc. No. 1), Plaintiffs William Ray White, Bernice R. White, and Tiffany Jones bring claims for violation of their federal constitutional rights, as well as state law claims, arising out of two separate incidents in which certain of the defendants entered their home. Plaintiffs have named as defendants Harold Robertson and Associates Bail Bonding, and its owner/employees Harold Robertson and David Butler; ABC Fugitive Recovery Corporation and its employees, Roosevelt Jones, and John Doe Bounty Hunter; and the "County Defendants,"

Wayne County, Tennessee, the Wayne County Sheriff's Department, Ric Wilson, former Sheriff of Wayne County, and Sheriff's Department employees Dusty Malugen and Donnie Carroll.

According to the Complaint, Plaintiffs William and Bernice White are married and live at 198 Treece Lane in Clifton (Wayne County), Tennessee. On December 20, 2017,[1] Plaintiffs allege, at approximately 7:30 a.m., Defendants Robertson and Butler knocked on Plaintiffs' back door, and Defendant Robertson advised Mrs. White that he was there to arrest Keith Staggs on a warrant for failure to appear in court. Mrs. White advised the defendants that Keith Staggs did not live at the house, and had only visited once and spent the night six weeks earlier. Defendants Robertson and Butler allegedly pushed past Mrs. White and entered the house without permission. At that point, Plaintiffs allege, Mr. White had made it downstairs in his pajamas and found Defendants Robertson and Butler standing in his living room. When the defendants told Mr. White they were there with an arrest warrant to arrest Mr. Staggs, Mr. White allegedly told the defendants Mr. Staggs did not live there, and that he thought Mr. Staggs lived in Hohenwald, Tennessee. Plaintiffs allege Defendants Robertson and Butler then became "aggressively confrontational, telling the Whites they did not believe their 'story' and had on good information" that Keith Staggs was in their home. (Doc. No. 1 ¶ 29). Mr. White allegedly told the defendants to have a look around to satisfy themselves that Keith Staggs was not there. According to the Complaint, Defendants Robertson and Butler conducted the search, did not find Mr. Staggs, and after forty minutes, left the house.

About a week later, the Complaint alleges, Defendants Roberson and Butler returned to Wayne County to search for Mr. Staggs, and were accompanied by Defendants Jones and Doe,

---

[1] Although Paragraph 20 in the Complaint states the year as "2018," the remaining allegations state the year as "2017." Therefore, the Court assumes the year in Paragraph 20 is a typographical error.

"bounty hunters" from ABC Fugitive Recovery Corporation. Plaintiffs allege one of these defendants advised Dusty Malugen, a detective with the Wayne County Sheriff's Department, that they would be going to the Whites' home in an attempt to apprehend Mr. Staggs. Detective Malugen allegedly stated that he had long suspected illegal activity at the Whites' home, but had not been able to confirm his suspicions.

At approximately 7:30 a.m. on December 27, 2017, Plaintiffs allege, the Whites were allegedly asleep in their home, along with their daughter, Plaintiff Tiffany Jones, who was visiting and sleeping in the guest bedroom on the first floor. According to the Complaint, these defendants violently pounded on the back door, and when Mrs. White looked through the glass, she saw two males holding large guns and wearing military-type clothing with law enforcement badges on the chests of their shirts and bullet-proof vests. As Mrs. White started to open the back door, she allegedly heard pounding at the front door, and when she turned to go to the front door, she left the back door slightly ajar. As she turned the knob on the front door, Mrs. White heard the men at the back door "storm inside" her home, and at the same time, the individuals at the front door "forced their way inside" as well. (*Id.* ¶ 39). Plaintiffs allege all the "intruders" appeared to be wearing bullet-proof vests and were armed with shotguns attached to straps. One of the intruders allegedly began yelling for Mr. White.

According to the Complaint, Mr. White was awakened by the commotion, and headed down the stairs in his underwear. Along the way, he was allegedly confronted by Defendant Doe, who pointed a gun at Mr. White's head. Plaintiffs allege Mr. White asked why the men were there, and when he was told they were looking for Mr. Staggs, Mr. White told them Mr. Staggs did not live there. When Mr. White asked the men if they had a search warrant, Plaintiffs allege, one of the bounty hunters responded "'I don't have to have a search warrant, I can go anywhere I

3

want anytime I am in Tennessee.'" (*Id.* ¶ 41). Plaintiffs allege Mr. White repeatedly asked the men to leave, but rather than leaving, the men told Mr. White "he had better get down the stairs and take a seat on the sofa or he would be shot." (*Id.* ¶ 42). Mr. White allegedly complied by taking a seat on the sofa with his wife, where he was told not to move.

The man holding the Whites at gunpoint told Defendant Jones to go into the bedroom where Plaintiff Jones was asleep and search the bedroom. Defendant Jones allegedly entered the bedroom and ordered Plaintiff Jones, who was wearing only a sleep shirt, out of the bed and into a chair in the living room. At this point, all the plaintiffs, who were still in their pajamas and undergarments, were told to hand over their telephones. Plaintiffs allege the house was becoming very cold at this point because the back door was open.

Defendant Robertson allegedly told the plaintiffs they were going to search the entire house because he had an arrest warrant for Mr. Staggs and a reliable source indicated Mr. Staggs was in the house and under a bed. Plaintiffs allege Mr. White stated his refusal to give permission to search the house, and the men told him they did not need his permission. Defendant Jones then allegedly stood by the front door with a shotgun held across his chest while Defendant Doe conducted an hour-long search of the house.

During this time, the Complaint alleges, Plaintiff Jones asked to go to the bathroom, but Defendant Butler refused, and instead asked her uncomfortable personal questions while leering at her chest. Due to a history of back problems, Plaintiff Jones found it difficult to sit for such a long period of time at gun point. Plaintiffs also allege Mr. White was initially refused a bathroom break, and when he was eventually allowed to go to the bathroom, he was forced to leave the door open while Defendant Robertson observed.

According to the Complaint, after about an hour into the search, Defendant Doe came downstairs holding a clear jar with a small amount of marijuana. Defendant Doe was allegedly angry at not having located Mr. Staggs, and told the plaintiffs "'I do not normally care about pot but now you have pissed me off,'" signaling his intent to continue an exhaustive search. (*Id.* ¶ 51). Defendant Doe then when back upstairs to continue the search.

At approximately 11:00 a.m., Plaintiffs allege, Defendant Robertson made a call to Defendant Malugen at the Wayne County Sheriff's Department. Defendants Malugen and Carroll allegedly arrived a short time later and entered the Whites' home without permission or a warrant. Plaintiffs allege they were still being held at gunpoint at that time. Defendant Malugen then allegedly told Mr. White he needed to sign a consent form so Defendant Malugen could search, and Defendant Carroll confiscated Mr. White's phone. When Mr. White asked what would happen if he refused to sign, Defendant Malugen allegedly threatened to arrest Mr. White's wife and daughter. At this point, the Complaint alleges, "[h]aving been held at gunpoint in his underwear with his wife and daughter, for over two hours in freezing temperatures, Mr. White had no choice but to sign the consent form presented to him by Detective Malugen." (*Id.* ¶ 55).

Plaintiffs allege Defendants Robertson and Doe then searched a mobile home located behind the Whites' home, after tearing the door off. While the plaintiffs were still being held in the living room by Defendant Jones, Defendant Malugen allegedly went upstairs to continue the search, where he seized guns and marijuana. Defendant Malugen then arrested Mr. White in his home without a warrant.

The Complaint asserts 10 claims arising out of these allegations: (1) "Negligence, Gross Negligence, and Willful and Wanton Misconduct" against Defendants Robertson, Butler, Jones,

5

Doe, Malugen, and the Wayne County Sheriff's Department (Count One); (2) "Violation of Federal Civil Rights 42 U.S.C. § 1983 – Right to be Secure From Unreasonable Search and Seizure – Fourth Amendment; Art. 1 § 7, Tennessee Constitution" (Count Two) against all Defendants; (3) "Violation of Federal Civil Rights 42 U.S.C. § 1983 – Pattern and Practice – Fourteenth Amendment" against Defendants Wayne County Sheriff's Department, Wilson, Malugen, and Carroll (Count Three); (4) Trespass against all Defendants (Count Four); (5) Intentional Infliction of Emotional Distress against Defendants Robertson, Butler, Jones, Doe, and Malugen (Count Five); (6) Assault and Battery against Defendants Robertson, Butler, Jones, and Doe (Count Six); (7) False Imprisonment against Defendants Robertson, Butler, Jones, Doe, and Malugen (Count Seven); (8) Conspiracy against Defendants Robertson, Butler, Jones, Doe, Carroll, and Malugen (Count Eight); (9) Intentional Infliction of Emotional Distress against Defendants Robertson, Butler, Jones, Doe, and Malugen (Count Nine); and (10) Invasion of Privacy against Defendants Robertson, Butler, Jones, Doe, and Malugen (Count Ten). (*Id.* ¶¶ 62-107).

Through the pending Motion, the County Defendants seek to dismiss all claims against them primarily on the grounds that Mr. White challenged the search in state criminal proceedings and the state court ruled against him. In their Response (Doc. No. 28, at 7), Plaintiffs agree to dismiss the Wayne County Sheriff's Department as a defendant in this case, and agree that Counts Five and Nine are duplicative. Accordingly, the Court grants the request to dismiss the Wayne County Sheriff's Department, and to dismiss Count Nine. Plaintiffs otherwise argue the Motion should be denied.

## III. Analysis

### A. The Standards Governing Motions to Dismiss

In considering a motion to dismiss, a court must determine whether the plaintiff has sufficiently alleged "a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). Well-pleaded factual allegations are accepted as true and are construed in the light most favorable to the nonmoving party. 129 U.S. at 1950; *Mills v. Barnard*, 869 F.3d 473, 479 (6th Cir. 2017).

With regard to most of Plaintiffs' claims, the County Defendants argue dismissal is warranted by a state court ruling in Mr. White's criminal case that found Mr. White validly consented to the search of his home. The defendants contend the doctrine of collateral estoppel requires the Court to accept that ruling in this case. To support their argument, the County Defendants rely on various public records from the Circuit Court for Wayne County filed in Mr. White's criminal prosecution. Plaintiffs argue the Court should not consider the documents because "their intended purpose is based on a misunderstanding of their function." (Doc. No. 28, at 7). Plaintiff does not appear to contest their status as public records, however, nor their authenticity.

As a general rule, the court is not to consider matters outside of the pleadings when ruling on a Rule 12(b)(6) motion to dismiss. *See, e.g., Seaton v. TripAdvisor LLC,* 728 F.3d 592 (6th Cir. 2013); *J.P. Silverton Industries L.P. v. Sohm*, 243 Fed. Appx 82, 86-87 (6th Cir. 2007). Before considering such matters, Rule 12(d) provides that the court must first convert the motion

to dismiss to one for summary judgment. The Sixth Circuit has held, however, that a court need not convert the motion under Rule 12(d) if it considers only "the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). More specifically, courts may take judicial notice of proceedings in other courts of record. *Lynch v. Leis,* 382 F.3d 642, 647 n. 5 (6th Cir. 2004); *Lyons v. Stovall,* 188 F.3d 327, 332 n. 3 (6th Cir. 1999); *see also Joseph v. Bach & Wasserman, LLC,* 487 Fed. Appx 173, 178 n. 2 (5th Cir. 2012) (holding that, in reviewing a Rule 12(b)(6) motion to dismiss, a court may take judicial notice of matters of public record to include a pleading filed with a state district court). Based on this authority, the Court may consider the Wayne County Circuit Court records filed by the County Defendants (Doc. Nos. 20-1 to 20-4) without converting the motion to dismiss to a motion for summary judgment.

## B. Collateral Estoppel

In *Allen v. McCurry,* 449 U.S. 90, 102, 101 S. Ct. 411, 66 L.Ed.2d 308 (1980), the Supreme Court held that issues decided in a state court criminal proceeding may preclude relitigation of the same issues in a subsequently-filed Section 1983 action in federal court. *See also Donovan v. Thames,* 105 F.3d 291, 293 (6th Cir. 1997). The plaintiff in *Allen* had moved to suppress certain evidence in his state court criminal proceeding on Fourth Amendment grounds, and the state trial court denied the motion. 449 U.S. at 92. The plaintiff subsequently filed a Section 1983 action in federal court against the officers who had seized the evidence. *Id.* The Supreme Court held that the Section 1983 action was barred by issue preclusion because the Fourth Amendment issue had been resolved against the plaintiff in state court. *Id.*, at 105. In

8

reaching its decision, the Court reasoned that the enactment of Section 1983 did not reflect an intent by Congress to contravene the full faith and credit statute, 28 U.S.C. § 1738, or the common law rules of preclusion. *Id.*, at 97-98. Thus, *Allen* "established that issues actually litigated in a state-court proceeding are entitled to preclusive effect in a subsequent federal § 1983 suit to the extent provided by the law of preclusion in the state where the judgment was rendered." *Donovan,* 105 F.3d at 293-94.

Based on *Allen*, the Court is required to consider Tennessee law on issue preclusion, also referred to as collateral estoppel. *Id.,* at 294-95. In Tennessee, collateral estoppel "generally bars parties from relitigating issues that have been decided in prior litigation between the same parties or their privies." *George v. Hargett,* 879 F.3d 711, 718 (6th Cir. 2018) (citing *Mullins v. State,* 294 S.W.3d 529, 534 (Tenn. 2009)). In order to successfully rely on collateral estoppel, a party must show "'(1) that the issue to be precluded is identical to an issue decided in an earlier proceeding, (2) that the issue to be precluded was actually raised, litigated, and decided on the merits in the earlier proceeding, (3) that the judgment in the earlier proceeding has become final, (4) that the party against whom collateral estoppel is asserted was a party or is in privity with a party to the earlier proceeding, and (5) that the party against whom collateral estoppel is asserted had a full and fair opportunity in the earlier proceeding to contest the issue now sought to be precluded.'" *George,* 879 F.3d at 718 (quoting *Mullins,* 294 S.W.3d at 535).

The earlier decision on which the defendants seek to rely is the August 7, 2018 Order of the Wayne County Circuit Court denying Mr. White's Motion to Suppress (Doc. Nos. 20-1, 20-2). The defendants have also filed a "Wavier of Trial by Jury and Petition to Enter Plea of Guilty" signed by Mr. White and entered on November 7, 2018 (Doc. No. 20-3), as well as an "Order of Deferral (Judicial Diversion)" entered on the same date (Doc. No. 20-4).

9

The Court begins its consideration with the third requirement for application of collateral estoppel – that the earlier judgment by the state court must be final. In addressing this requirement, the defendants simply state: "The order denying Mr. White's Motion to Suppress Evidence led to a plea of guilty, which has become final." (Doc. No. 21, at 8). To support that argument, the defendants cite Mr. White's Petition to Enter Plea of Guilty. (Doc. No. 20-3, at 2). The Petition reflects an agreement between the parties that the State would "nolle"[2] Counts 2 and 3, and Mr. White would enter a "plea based on State v. Hicks,"[3] and be placed on judicial diversion for four years on Count 1.[4] As noted above, the Petition was accompanied by an "Order of Deferral (Judicial Diversion)" entered by the Wayne County Circuit Court Judge on the same date. (Doc. No. 20-4). The Diversion Order states: "It is, therefore, ORDERED that the prosecution in this case is deferred pursuant to T.C.A. 40-35-313, and the defendant is placed on probation" for a term of four years, from November 7, 2018 until November 7, 2022. (*Id.*)

Under Tennessee's judicial diversion statute, a judgment of conviction is not entered against a defendant who participates in judicial diversion, even when he has been found guilty, or enters a plea of guilty or nolo contendere. Tenn. Code Ann. § 40-35-313; *Rodriguez v. State,* 437 S.W.3d 450, 455 (Tenn. 2014). Instead, the plea or verdict is held in abeyance pending a

---

[2] The prosecution may "n*olle prosequi,*" or dismiss, a criminal charge against a defendant under Tennessee state law. *See, e.g., State v. Layman*, 214 S.W.3d 442, 448 (Tenn. 2007).

[3] The Court notes that *Hicks v. State,* 983 S.W.2d 240, 247 (Tenn.Crim.App.1998) allows a trial judge in Tennessee to accept a guilty plea even when the defendant says that he is innocent, so long as there is a factual basis for the plea. *See Wilson v. State,* 2004 WL 1533830, at *12 (Tenn. Crim. App. July 8, 2004).

[4] More specifically, the Petition includes a section outlining the "Recommendation of State" for three charges. (Doc. No. 20-3, at 2). The State recommended "Nolle" for Count 2 (possession of a firearm with intent to go armed) and Count 3 (methamphetamine casual exchange). (*Id.*) For Count 1 (drug trafficking), the State recommended "4 yrs, to be placed on Judicial Diversion, 2000 fine, plea based on State v. Hicks and Defendant agrees to plead out of range + costs All seized to WCSD & forfeited." (*Id.*)

probationary period established by the trial court. *Id.* If the defendant violates the conditions of judicial diversion during this period, the trial court may than enter a judgment of guilt, but if the defendant successfully completes the period of diversion, the trial court dismisses the proceedings without an adjudication of guilt or the entry of a judgment of guilt. *Id.* With some exceptions not relevant here, the dismissal is not considered a conviction. Tenn. Code Ann. § 40-15-313(a)(2); 437 S.W.3d at 456. The successful defendant may also apply to the trial court for "expunction" of the criminal proceedings from all records, the effect of which "is to restore the person, in the contemplation of the law, to the status the person occupied before such arrest or indictment or information." Tenn. Code Ann. § 40-15-313(b); *Rodriguez,* 437 S.W.3d at 456.

The County Defendants have not addressed the issue of whether a suppression order entered before an order of judicial diversion satisfies the collateral estoppel "final judgment" requirement. First, the defendants have not shown that a state criminal case with a diversion order in effect is final. In that regard, the Court notes that a defendant who has been granted judicial diversion in Tennessee has no appeal as of right to the state court of appeals. 437 S.W.3d at 456-57 (citing *State v. Norris,* 47 S.W.3d 457, 461-63 (Tenn. Crim. App. 2000)). The defendants have also failed to show the suppression order can have collateral estoppel effect despite the ultimate outcome of the criminal case. In *Wiggins v. Metropolitan Government of Nashville,* 2017 WL 4863166 (6th Cir. May 8, 2017), the Sixth Circuit explained that an order denying a motion to suppress is not a final judgment because it does not adjudicate all the claims. The court went on to deny preclusive effect to a suppression ruling because the charge connected to the suppression ruling was ultimately dropped, and no final judgment was ever entered on that charge. *Id.,* at *2-3; s*ee also Bradley v. Reno,* 749 F.3d 553 (6th Cir. 2014) (holding that state suppression ruling did not have preclusive effect when the state defendant was subsequently

acquitted and no longer able to appeal the ruling). As the defendants have failed to establish the finality requirement for the application of collateral estoppel, the state court suppression ruling will not have preclusive effect in this case.[5]

## C. Count One ("Negligence, Gross Negligence, and Willful and Wanton Misconduct")

Count One names Defendant Malugen and the Wayne County Sheriff's Department in addition to the private defendants. As set forth above, the Wayne County Sheriff's Department is dismissed.

Defendant Malugen argues this claim should be dismissed against him because, based on collateral estoppel, it has already been established that Defendant Malugen had consent to search Plaintiffs' home. For the reasons set forth above, the County Defendants have failed to establish the elements of collateral estoppel regarding the state court's ruling on consent. In addition, the Court notes that Count One alleges state tort law claims, and Defendant Malugen has not addressed the applicability of his collateral estoppel arguments to such claims. Thus, Defendant Malugen's request to dismiss Count One is denied.

---

[5] The defendants also initially argued Plaintiffs' claims are barred by *Heck v. Humphrey,* 512 U.S. 477, 114 S. Ct. 2364, 129 L.Ed.2d 383 (1994), but withdrew that argument in their Reply brief based on the pretrial diversion issue. *See, e.g., Butts v. City of Bowling Green,* 374 F. Supp. 2d 532, 537 (W.D. Ky. 2005) (holding pretrial diversion under Kentucky law is not a criminal conviction for purposes of *Heck*); *S.E. v. Grant County Bd. Of Educ.,* 544 F.3d 633, 637-39 (6th Cir. 2008) (holding that *Heck* does not apply to proceeding ending in juvenile diversion by which plaintiff was neither convicted nor sentenced); *Wiggins,* 2017 WL 4863166, at *3 (holding that *Heck* does not apply to a an unreasonable search claim relating to evidence on a state charge that was dropped by the state). In any event, *Heck* does not necessarily apply to Fourth Amendment claims. *Heck*, 512 U.S. at 487 n.7 (explaining that a federal claim alleging an unreasonable search under the Fourth Amendment "may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction" because such a claim "would not *necessarily* imply that the plaintiff's conviction was unlawful" given "doctrines like independent source and inevitable discovery . . . and especially harmless error . . . ")

**D. Count Two** ("Violation of Federal Civil Rights 42 U.S.C. § 1983 – Right to be Secure From Unreasonable Search and Seizure – Fourth Amendment; Art. 1 § 7, Tennessee Constitution")

Count Two alleges all defendants violated Plaintiffs' Fourth Amendment rights to be free from unreasonable searches and seizures. For the reasons set forth above, the Wayne County Sheriff's Department is dismissed as a defendant.

The remaining County Defendants – Defendants Wayne County, Wilson, Malugen and Carroll – seek to dismiss on separate grounds. Defendant Wilson argues the Complaint does not allege any conduct or theory under which he can be held liable. Plaintiffs do not address this argument in their Response, except to suggest that they would add allegations against Defendant Wilson if allowed to amend their Complaint.[6] Count Two does not assert any allegations regarding the liability of Defendant Wilson. Therefore, Defendant Wilson is dismissed from Count Two.

Defendant Wayne County argues it should be dismissed because Plaintiffs have not alleged the challenged conduct was due to the municipality's "official policy," as required by *Monell v. Department of Social Services,* 436 U.S. 658, 692, 98 S. Ct. 2018, 56 L.Ed.2d 611 (1978). Plaintiffs do not address this argument in their Response, except to suggest that they would add allegations against Wayne County if allowed to amend their Complaint. Count Two does not assert any allegations regarding the liability of Defendant Wayne County. Thus, Defendant Wayne County is dismissed from Count Two.

Defendant's Malugen and Carroll argue they should be dismissed from Count Two because, based on collateral estoppel, it has already been established that they had consent to

---

[6] Plaintiffs' request to amend the Complaint has since been denied by the Magistrate Judge. (Doc. No. 49).

13

search, and therefore, they could not have committed a Fourth Amendment violation. For the reasons set forth above, these defendants have failed to establish that the state court's finding is entitled to collateral estoppel effect in this case.

These defendants alternatively argue the Complaint fails to allege they were involved in any detention of Plaintiffs, and even if they were, the detention was supported by probable cause or reasonable suspicion. The "Facts" section of the Complaint alleges that the private defendants were holding Plaintiffs at gunpoint when Defendants Malugen and Carroll arrived at Plaintiffs' home. (Doc. No. 1 ¶¶ 52, 53). After their arrival, the detention at gunpoint continued as Defendant Malugen discussed the consent to search form with Mr. White and searched the premises, up until Defendant Malugen arrested Mr. White. (*Id.*, ¶¶ 53-57). The facts recited in the Complaint essentially allege that Defendants Malugen and Carroll impliedly agreed to the detention of Plaintiffs. Viewed in the light most favorable to Plaintiffs, the Complaint sufficiently alleges an unreasonable seizure on the part of Defendants Malugen and Carroll. The defendants' argument that any seizure was reasonable because the private defendants had already found marijuana ignores the allegations that the defendants' initial entry into the house was unlawful and the subsequent search and seizure was tainted. *See, e.g., Utah v. Strieff,* ___ U.S. ___,136 S. Ct. 2056, 2061, 195 L. Ed. 2d 400 (2016) (explaining that the exclusionary rule "encompasses both the 'primary evidence obtained as a direct result of an illegal search or seizure'" and "'evidence later discovered and found to be derivative of an illegality,' the so-called 'fruit of the poisonous tree.'") In short, the defendants cannot establish the alleged search and seizure was constitutionally reasonable based solely on the allegations of the Complaint. Accordingly, the request to dismiss Count Two against Defendants Malugen and Carroll is denied.

The County Defendants also argue that the portion of Plaintiffs' claim in Count Two that is based on a violation of the Tennessee Constitution should be dismissed because it may not be brought through Section 1983. Plaintiffs have not addressed this argument. To state a claim under Section 1983, a plaintiff must allege the violation of a right secured by the Constitution and the laws of the United States, and that the violation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L.Ed.2d 40 (1988); *Brennan v. Dawson,* 752 Fed. Appx. 276, 281 (6th Cir. 2018). As Plaintiffs have not cited any authority permitting them to assert a violation of the Tennessee Constitution through Section 1983, that portion of the claim is dismissed.

**E. Count Three ("Violation of Federal Civil Rights - 42 U.S.C. § 1983 – Pattern and Practice – Fourteenth Amendment")**

Count Three alleges Defendants Wayne County Sheriff's Department, Wilson, Malugen, and Carroll violated Plaintiffs' Fourteenth Amendment rights. For the reasons set forth above, Defendant Wayne County Sheriff's Department is dismissed. As with Count Two, Count Three does not assert any allegations regarding the liability of Defendant Wilson. Therefore, Defendant Wilson is also dismissed from Count Three.

The remaining defendants – Defendants Malugen and Carroll – argue Plaintiffs' allegations do not explain how their Fourteenth Amendment rights were violated. Count Three primarily alleges that "[a]s a direct and proximate result of these Defendants (sic) grossly negligent, willful, malicious acts and omissions, recklessness, conscious and deliberate indifference to Plaintiff's rights and their egregious and arbitrary conduct, Plaintiffs suffered deprivation of their rights secured by the Fourteenth Amendment. . ." (Doc. No. 1 ¶ 79).

Although these allegations are sparse, the defendants have failed to cite any authority outlining the elements of a Fourteenth Amendment claim, nor do they apply those elements to the allegations in Count Three.[7] "'It is not sufficient for a party to mention a possible argument in [a] skeletal way, leaving the court to put flesh on its bones.'" *Murphy v. Lazarev,* 653 Fed. Appx 377, 378 (6th Cir. 2016) (quoting *El–Moussa v. Holder*, 569 F.3d 250, 257 (6th Cir. 2009)); *see also Laudien v. Caudill,* 92 F.Supp.3d 614, 619 (E.D. Ky. 2015) (explaining that the Rule 12(b)(6) movant always bears the initial burden, and that the court will not develop the argument for the defendant seeking to dismiss a claim). Therefore, the request to dismiss Count Three against Defendants Malugen and Carroll is denied.

**F. Count Four (Trespass)**

Count Four alleges all defendants are liable for trespassing on Plaintiffs' property. For the reasons set forth above, Defendant Wayne County Sheriff's Department is dismissed. As with the previous counts, Count Four does not assert any allegations regarding the liability of Defendant Wilson. Therefore, Defendant Wilson is also dismissed from Count Four.

The remaining County Defendants – Defendants Wayne County, Malugen and Carroll – seek to dismiss on separate grounds. Defendant Wayne County argues only it "is immune to

---

[7] The Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Due Process Clause of the Fourteenth Amendment has both a procedural and a substantive component. *Range v. Douglas,* 763 F.3d 573, 588 (6th Cir. 2014). To state a procedural due process claim, a plaintiff must show: (1) he had a life, liberty, or property interest protected by the Due Process Clause; (2) he was deprived of the protected interest; and (3) the defendant did not afford him adequate procedural rights. *Daily Servs., LLC v. Valentino,* 756 F.3d 893, 904 (6th Cir. 2013). Substantive due process is "'[t]he doctrine that governmental deprivations of life, liberty or property are subject to limitations regardless of the adequacy of the procedures employed.'" *Range,* 763 F.3d at 588 (quoting *Pearson v. City of Grand Blanc,* 961 F.2d 1211, 1216 (6th Cir.1992)). "It protects a narrow class of interests, including those enumerated in the Constitution, those so rooted in the traditions of the people as to be ranked fundamental, and the interest in freedom from government actions that "'shock the conscience.'" *Id.*

claims of trespass. Tenn. Code Ann. § 29-20-205(2)." (Doc. No. 21, at 16). Section 29-20-205(2) preserves government immunity for "all governmental entities" where an employee's acts cause injury arising out of various torts, including "intentional trespass." Tenn. Code Ann. § 29-20-205(2). Plaintiffs do not address this argument in their Response, except to suggest that they would add allegations against Wayne County if allowed to amend their Complaint. Under these circumstances, the Court concludes that Defendant Wayne County should be dismissed from Count Four.

Defendant's Malugen and Carroll argue this claim should be dismissed against them because, based on collateral estoppel, it has already been established that Defendant Malugen had consent to be on the property, and therefore, there could be no trespass. For the reasons set forth above, the County Defendants have failed to establish the elements of collateral estoppel regarding the state court's ruling on consent. Accordingly, the request to dismiss Count Four against Defendants Malugen and Carroll is denied.

## G. Count Five (Intentional Infliction of Emotional Distress)

Count Five alleges Defendant Malugen and certain non-County defendants are liable for intentional infliction of emotional distress. Defendant Malugen contends the only allegation made in this count involving his conduct is simply being on the property without permission. Thus, Defendant Malugen argues, this claim should be dismissed because, based on collateral estoppel, it has already been established that Defendant Malugen had consent to be on the property. For the reasons set forth above, Defendant Malugen has failed to establish the elements of collateral estoppel regarding the state court's ruling on consent. Accordingly, the request to dismiss Count Five against Defendant Malugen is denied.

**H. Count Seven (False Imprisonment)**

Count Seven alleges Defendant Malugen and certain non-County defendants falsely imprisoned the plaintiffs. Defendant Malugen argues this claim should be dismissed against him because there are no allegations that he "told Plaintiffs that they had to stay in the house (or even in the living room) or otherwise made any effort to 'imprison' or detain Plaintiffs." (Doc. No. 21, at 17).

The "Facts" section of the Complaint alleges that the private defendants were holding Plaintiffs at gunpoint when Defendant Malugen and Defendant Carroll arrived at Plaintiffs' home. (Doc. No. 1 ¶¶ 52, 53). After their arrival, the detention at gunpoint continued as Defendant Malugen discussed the consent to search form with Mr. White and searched the premises, up until Defendant Malugen arrested Mr. White. (*Id.*, ¶¶ 53-57). The facts recited in the Complaint essentially allege that Defendant Malugen impliedly agreed to the detention of Plaintiffs.

The defendants have not cited any authority addressing the issue of whether a defendant may be held liable for false imprisonment through implied agreement with another defendant. Indeed, the defendants have failed to cite any authority listing the elements of a false imprisonment claim under Tennessee law. Under these circumstances, the request to dismiss Count Seven against Defendant Malugen is denied. *See Murphy v. Lazarev, supra; Laudien v. Caudill, supra.*

**I. Count Eight (Conspiracy)**

Count Eight alleges a conspiracy between Defendant Malugen and certain non-County defendants. Defendant Malugen argues this claim should be dismissed because it has not been pled with specificity. As with Count Seven, however, Defendant Malugen has not cited any

authority listing the elements of a civil conspiracy claim under Tennessee law, nor has he addressed whether an allegation of implied agreement among the defendants is sufficient to support a conspiracy claim. Thus, the request to dismiss Count Eight against Defendant Malugen is denied.

**J. Count Ten (Invasion of Privacy)**

Count Ten alleges Defendant Malugen and certain non-County defendants invaded the privacy of Plaintiffs by forcing their way into Plaintiffs' home without permission. Defendant Malugen argues this claim should be dismissed because, based on collateral estoppel, it has already been established that Defendant Malugen had consent to search Plaintiffs' home. For the reasons set forth above, Defendant Malugen has failed to establish the elements of collateral estoppel regarding the state court's ruling on consent. Accordingly, the request to dismiss Count Ten against Defendant Malugen is denied.

## IV. Conclusion

For the reasons set forth above, Defendants' Motion to Dismiss (Doc. No. 20) is granted in part, and denied in part.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE